UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH WILCOX,<br><br>Defendant. | CRIMINAL NO. 14-cr-10212-RWZ |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America (the "Government") respectfully submits this memorandum to assist the Court in determining the appropriate sentence to impose on Defendant Joseph Wilcox ("WILCOX" or the "DEFENDANT"). On November 24, 2014, WILCOX pleaded guilty to a three-count Indictment. Counts 1 through 3 charged bank robbery, in violation of 18 U.S.C. § 2113(a). For the reasons stated below the Government recommends and respectfully requests that the Court sentence WILCOX to the low end of the correctly calculated U.S. Sentencing Guidelines (the "Guidelines") range, as provided in the final Presentence Investigation Report ("PSR"): a period of 151 months' incarceration, supervised release for a term of 3 years, a mandatory special assessment of $300.00, and restitution in the amount of $8,417.00. The PSR prepared by the United States Probation Office correctly calculated WILCOX's guideline sentencing range ("GSR") at 151 to 188 months' incarceration, based on a total offense level of 29 and Criminal History Category of VI.

**DEFENDANT'S CRIMINAL OFFENSES**

The Government incorporates the facts of WILCOX's offense conduct as set forth in the PSR, which are uncontested.

   **1.   Count One - Blue Hills Bank Robbery - Brookline - January 15, 2014**

On January 15, 2014, at approximately 11:24 AM, a white male wearing a hat, gloves, and sunglasses walked into the Blue Hills Bank located at 1337 Beacon Street, Brookline, Massachusetts.  The white male approached a teller window and provided the victim teller with a note that stated, "This is a hold-up."  When the victim teller asked the bank robber to let him review the note, the robber responded by gritting his teeth and saying, "give me the money."  The victim teller immediately handed the robber money from the top drawer, which did not include large bills or a dye pack.  The robber took the money and the demand note and exited the bank.  A subsequent audit confirmed that the robber took $1,318.00.  The robbery was recorded by the bank's surveillance cameras.

   **2.   Count Two – Eastern Bank Robbery - Cambridge - January 22, 2014**

One week later, on January 22, 2014, at approximately 12:00 PM, a white male wearing a hat, gloves, and sunglasses walked into the Eastern Bank located at 1 Brattle Square, Cambridge, Massachusetts.  The white male approached a teller window and provided the victim teller with a note that read, "no dye packs."  The victim teller handed the robber money.  The robber took the money and the demand note and exited the bank.  A subsequent audit confirmed that the robber obtained $839.00.  The robbery was recorded by the bank's surveillance cameras.  Later that day, law enforcement investigators observed video surveillance taken near the Eastern Bank in Cambridge, Massachusetts, before and after the bank robbery.  Based on the clothes depicted and worn by the robber in the bank surveillance videos, investigators noted that a street surveillance

video from other nearby business depicted the robber exiting and entering what appeared to be a white Mazda 626 before and after the bank robbery.

### 3. Count Three - TD Bank Robbery - Brookline - January 25, 2014

Three days later, on January 25, 2014, at approximately 10:37 AM, an unknown white male wearing a hat, gloves, and sunglasses walked into the TD Bank at 1641 Beacon Street, Brookline, Massachusetts.  The white male approached a teller window and provided the victim teller with a note that read, "Give me the 100's and large bills."  The victim teller handed the robber cash from the bottom drawer.  The robber demanded more money and told the victim teller to "hurry up, hurry up" but there is no indication what the victim teller said or did in response to the robber's comments.  The robber took the money handed to him by the victim teller and the demand note and exited the bank.  When interviewed, the victim teller recalled that the robber wore a black sweatshirt with the words "I (shape of a heart) HAIR" written on the front of the sweatshirt.  A subsequent audit confirmed that the robber took $6,260.00.  The robbery was recorded by the bank's surveillance cameras.  Video surveillance of the January 25, 2014 TD Bank robbery depicted the robber walking with a slight limp and wearing a sweatshirt with the quote "I (shape of a heart) HAIR."  After the robbery, video surveillance depicted a white male wearing the same clothes as the bank robber entering the driver's side of a white Mazda 626.

Security videos taken during all three of the bank robberies show that the banks were robbed by a white male, approximately 5'8"-5'10," medium to heavy build, wearing a winter style hat (a different hat was used by the robber at each bank robbery), black sunglasses, dark gloves, and heavy sweatshirt (a different sweatshirt was used by the robber at each bank robbery).  During the investigation of all three bank robberies, law enforcement officers

interviewed four non-percipient witnesses who identified the identity of the bank robber based on the bank surveillance photograph stills as WILCOX and, as noted above, after his arrest WILCOX pleaded guilty to all three bank robberies.

## SENTENCING RECOMMENDATION

*A.  The Applicable Guideline Sentencing Range of 151-188 Months Incarceration*

   1.   WILCOX's Offense Level

The PSR sets forth a calculation of the GSR based on the above charges and offense conduct.  WILCOX does not dispute that he is a career offender under the Guidelines, because the convictions at issue are for bank robbery, which is a crime of violence, and because he has prior convictions for armed robbery (PSR ¶ 68) and unarmed robbery (PSR ¶ 70), which are crimes of violence; all within the prescribed time periods of the career offender section.  USSG § 4B1.2(c).  Because WILCOX promptly accepted responsibility within the meaning of USSG § 3E1.1(B), there is a three level reduction for acceptance of responsibility.  (PSR ¶¶ 55-56.)  Therefore, WILCOX's total offense level is 29.  (PSR ¶ 57.)

The DEFENDANT contends that the Court should disregard the career offender provision of the Guidelines because it overstates his likely recidivism and this Court is free to depart from the career offender provision as it is common for district courts to do so.  However, in criticizing the Sentencing Commission's approach to calculating sentences for career offenders, in that the Sentencing Commission deviated from its traditional reliance on empirical study of sentencing practices and consequences defense counsel overlooks the plan Congressional mandate set forth in 28 U.S.C. § 944(h) to sentence career offenders at or near the statutory maximums and the Supreme Court precedent recognizing and upholding that mandate.  *United States v. LaBonte*, 520 U.S. 751, 758 (1997) ("Congress has expressly provided enhanced

maximum penalties for certain categories of repeat offenders in an effort to treat them more harshly than other offenders[.]"). When the Sentencing Commission attempted to provide a more lenient definition for the phrase "a term of imprisonment at or near the maximum term authorized," the Supreme Court struck it down as "inconsistent with the explicit Congressional mandate that career offenders be sentenced at or near the 'highest' terms prescribed for a specific offense." *Id*. at 758.

Consequently, whether or not the Sentencing Commission reviewed empirical data in establishing sentence ranges for career offenders, the career offender guideline derives from the clear Congressional mandate set forth in 28 U.S.C. § 994(h). In the instant case, WILCOX's statutory maximum term of imprisonment is 20 years on each of the three counts; the Government's sentencing recommendation, as explained below, is 151 months' incarceration which is almost half the statutory maximum penalty; while the DEFENDANT's recommended sentence of 72 months (6 years) has no connection whatsoever with the Congressional mandate in 28 U.S.C. § 994(h) or the DEFENDANT's offense conduct and criminal history.

### 2. WILCOX's Criminal History

WILCOX has a total criminal history score of 11, is a career offender and, thus, his Criminal History Category is VI. (PSR ¶ 74.)

### 3. Guideline Sentencing Range

WILCOX's GSR is 151 months to 188 months' imprisonment. (PSR ¶ 138.) As previously noted and discussed further below, the Government recommends a sentence of 151 months' incarceration, the low end of the GSR.

B. *Government's Recommendation and Sentencing Factors Under 18 U.S.C. §3553(a)*

Title 18 U.S.C. § 3553(a) requires a sentencing court to consider specific, enumerated factors when determining an appropriate sentence. These factors, *inter alia*, include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence imposed to reflect the seriousness of the offense to promote respect for the law; 3) a sentence necessary to provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and 4) the need to avoid an unwarranted sentencing disparity.

1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The nature of the above noted offenses are crimes of violence, it is clear that it was not an aberrant one-time decision by WILCOX to rob one bank because the record demonstrates that having eluded law enforcement after each bank robbery WILCOX intended to continue his spree of bank robberies. Moreover, WILCOX is presently 47 years old with a criminal history that demonstrates that he has been involved in the criminal justice system since his early 20s and just shy of three decades. Prior to his present convictions of bank robbery, WILCOX was previously convicted on two separate robbery charges. On January 16, 2003, at the age of 35, WILCOX robbed a Sovereign Bank in Suffolk County, Massachusetts, by approaching a bank teller and demanding cash while possessing a gun. (PSR ¶ 68.) After his conviction for the Sovereign Bank robbery WILCOX served approximately 5 years in state prison. (*Id*.) Following that sentence, merely 4 months after his release, on September 28, 2009, WILCOX committed another bank robbery when he robbed a Citizens Bank in Norfolk County, Massachusetts. (PSR ¶ 70.) WILCOX served approximately 3 years in state prison following his conviction for the Citizen Bank robbery. (*Id*.) In other words, WILCOX spent approximately 8 years in prison

from 2003 through 2012.  Moreover, a crime that is not captured in WILCOX's criminal history calculation but should be considered by the Court is an armed assault with intent to commit robbery committed by WILCOX at the age of 27.  (PSR ¶ 61.)  As described in the PSR, on September 25, 1994, WILCOX attempted to rob a convenience store with a twelve-inch steel rod that he claimed was a gun.  WILCOX was convicted for committing the attempted robbery, served approximately 3 years in state prison, and while that conviction is a crime of violence it is not scored for criminal history purposes in the PSR.  (PSR ¶ 61.); USSG § 4A1.2(e)(3).

    2. <u>The Sentence Imposed Must Reflect the Seriousness of the Offense</u>

WILCOX engaged in serious crimes.  Robbing banks is a serious offense which breeds violence and harms civilians utilizing banking institutions, bank representatives assisting customers, and law enforcement officers that are placed in danger to stop bank robbers.  WILCOX's brazen spree of 3 bank robberies, that took place within one month, placed innocent members of the community and bank employees in fear and peril.  WILCOX's conduct is worthy of a significant sanction and sentence less than the 151 months, as recommended by the Government, would not adequately reflect the serious nature of WILCOX's criminal conduct in this matter.

    3. <u>The Sentence Must Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct, and Protect the Public from Further Crimes of the Defendant</u>

Adherence to the recommended GSR sentence will create an adequate deterrent to similar criminal behavior and justly punish WILCOX for his actions.  Anything less than the Government's recommended 151 months' incarceration will not promote respect for the law nor deterrence.  While the public can understand that there are circumstances where a defendant may deserve a sentence less than that recommended by the Guidelines, this is not one of those times.

A shorter sentence would be less likely to dissuade those considering completing the same offenses from emulating WILCOX.

    4.  <u>The Sentence Must Avoid Unwarranted Sentencing Disparities</u>

WILCOX seeks a sentence of *over a 50 percent departure* from the 151 to 188 months' imprisonment range faced by other individuals at Offense Level 29 and Criminal History Category VI for the same offenses. WILCOX's individually-calculated GSR provides the "starting point and the initial benchmark" from which the Court may construct a sentence. *United States v. Davila-Gonzalez*, 595 F.3d 42, 47 (1st Cir. 2010) (internal citation omitted). It is important for courts to follow the Guidelines to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct. *See* 18 U.S.C. § 3553(a). If the Court grants a sentence within the advisory range, as the Government recommends, WILCOX's sentence in the First Circuit is more likely to be comparable to sentences in every other circuit. *See United States v. Booker*, 543 U.S. 220, 253 (2005). Comparable sentences across jurisdictions reinforce a sense of equal administration of justice and proportional punishment. *See Rita v. United States*, 551 U.S. 338, 347 (2007) ("a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines[.]") Accordingly, sentences with the applicable GSR will tend to achieve the salutary goal of reducing unwarranted disparities in sentences and thus, a departure below 151 months' imprisonment as requested by WILCOX risks creating an unwarranted disparity.

## CONCLUSION

For the above reasons, the Government recommends that this Court sentence WILCOX to 151 months' incarceration, 3 years of supervised release, a mandatory $300.00 special assessment and restitution in the amount of $8,417.00.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: */s/ Carlos A. López*
CARLOS A. LÓPEZ
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3242
Carlos.Lopez3@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Carlos A. López*
CARLOS A. LÓPEZ
Assistant United States Attorney

Date: March 4, 2015